THE TOWN OF HAMDEN *vs.* THE TOWN OF BETHANY.

The statute (Gen. Statutes, p. 198, secs. 13, 14,) provides that the collectors of taxes shall, within eighteen months after any tax becomes payable, deliver to the selectmen of the town a certificate under oath that they made legal demand upon the persons named in it for their taxes and that they neglected to pay; that the selectmen may abate the taxes of such persons; that the selectmen shall within twenty days thereafter lodge with the town clerk for record such certificate and a list of the persons whose taxes have been so abated; that a copy thereof attested by the town clerk shall be *primâ facie* evidence that such taxes have been demanded and not paid; and that an omission to make such certificate and list and cause the same to be recorded shall, as against the town, be conclusive evidence that such taxes have been paid. Held that the statute was not limited in its application to controversies with regard to tax liens upon property, but was intended to apply to every case in which the question whether a tax had been paid could arise, where the town was a party.

Held therefore that a town, in a case where there had been an omission to lodge with the town clerk such a certificate and list, could not show by any evidence whatever, that a person for whose support as a pauper the town was sued, had failed to gain a settlement in the town by the non-payment of taxes payable within the period that would have been covered by such certificate and list.

The statute (Gen. Statutes, p. 199, sec. 5,) requires the selectmen of any town in which a pauper belonging to another town is chargeable, to give notice of his condition to such other town, and provides that such notice may be given by a letter stating the name of the pauper and that he is chargeable. The following notice was sent by the selectmen of the town of *H* to the selectmen of the town of *B*: "William Hall, who we believe belongs in *B*, is on the expense of the town of *H*. He is a steady, hard-working man, but has broken his leg." Held—1. That the expression "on expense of the town" was a sufficient statement that he was a pauper. 2. That the notice was not insufficient by reason of the fact that the pauper's name was William E. Hall, and that the initial of his middle name was omitted, since the selectmen of *B* by reasonable inquiry could have ascertained who was intended, and especially as he was described as having a broken leg.

And held that it would not have made the notice insufficient if there had been in fact another inhabitant of the town of *B* named William Hall.

ASSUMPSIT, for supplies furnished to a pauper of the defendant town; brought to the Court of Common Pleas of New Haven County, and tried to the jury, on the general issue, before *Robinson, J.* Verdict for the plaintiffs, and motion for a new trial for error in the rulings and charge of the court. The case is sufficiently stated in the opinion.

Town of Hamden *v.* Town of Bethany.

*C. Ives*, in support of the motion.

*H. Stoddard*, contra.

PARDEE, J.   For the purpose of proving that one William E. Hall had his settlement in the town of Bethany, the town of Hamden offered evidence tending to show that he had resided continuously in Bethany from April, 1860, to October, 1868; that during that time he had supported himself and his family without becoming chargeable to that or any other town, and without receiving aid or support from any other source; that in each of those years Bethany had assessed taxes against him, none of 'which had been abated; and that he had paid all taxes legally imposed upon and demanded of him.

The statute (Revision of 1875, page 198, sections 13 and 14,) provides that "every collector of town taxes shall, within eighteen months after any tax becomes payable, make under oath and deliver to the selectmen of the town a written certificate that he made legal demand for such taxes of the person named in such certificate and that such person refused or neglected to pay the same; and said selectmen may abate the taxes of all persons named in such certificate; and shall within twenty days thereafter lodge with the town clerk such certificate and a list under their hands of persons whose taxes were so abated, which shall be recorded and lodged on file in his office; and a copy thereof, attested by the town clerk, shall be *primâ facie* evidence that such taxes have been demanded according to law and have not been paid; and the omission of the collector of any tax to make such certificate, and of the selectmen of any town to make said list and cause such certificate and list to be recorded, shall, *as against the town in which such taxes are laid, be conclusive evidence that such taxes have been paid.*"

The collector of taxes for Bethany had not made the certificate required by the statute, in reference to Hall; nor had the selectmen made the required list; nor had they caused any certificate or list applicable to him to be recorded in the records of the town.

By way of answer to the testimony introduced by Hamden, Bethany offered the collector of its taxes for the years 1864 and 1865, as a witness to prove that he had legally demanded of Hall the amount of the taxes assessed against him for each of those years, and that he had neglected and refusedt o pay the same. Hamden objected to the reception of this testimony and the court excluded it; of which ruling Bethany complains.

For reasons satisfactory to itself the legislature has by express enactment varied the common law mode of proving one particular fact. The statute declares that the absence from the records of the town of a certain certificate and list to be made by the collector of any tax and by the selectmen, respectively, shall be accepted by all courts as conclusive proof that certain assessed taxes have been paid. Therefore, no matter what or how much evidence Bethany may be able to introduce in support of its claim that Hall did not pay the taxes assessed against him, the overruling statute declares that the legal weight of it is not equal to that of the proven fact of the absence of the certificate and list referred to; that this latter must still remain legally uncontradicted and conclusive; of course then the statute excludes the evidence offered, for the law is not to be presumed to permit the court to receive evidence which can have no possible weight in determining the issue involved. Nor can we admit the force of the claim of counsel for Bethany, that this statutory rule of evidence is not applicable to a case like the one before us, but was designed for a rule of repose for only one class of controversies growing out of the assessment of taxes, namely, those springing from long dormant tax liens upon real estate. For, the language of the act is most comprehensive; it has no exceptions or limitations; by its terms, whenever and wherever in any court in this state the question presents itself, the absence of this certificate shall conclude the parties and the court; no one can be permitted to assert non-payment. As there is no language to support the limitation claimed, so too there would seem to be little reason for it. In many controversies between towns as to the support of paupers the payment or non-payment of taxes assessed is the pivotal fact;

Town of Hamden *v.* Town of Bethany.

perhaps these controversies are as numerous and as vexatious as are those growing out of stale tax liens upon real estate; presumably the need of repose is as pressing in the former as in the latter class of cases. Indeed, in the matter of tax liens upon real estate the law has elsewhere provided a certain measure of repose after the conveyance of the land by the person against whom the taxes are assessed, and that is in fact the case where repose is of any real importance.

We shall not be justified in placing, upon inference merely, such constructive limitations upon a statute so beneficial in operation, as will prevent its application to a large class of cases needing this rule of rest, especially as the legislature has left no hint that this formed any part of its design.

The statute provides that when a person, not an inhabitant of the town in which he resides, shall become poor and unable to support himself, the selectmen of such town shall furnish him with necessary support as soon as his condition comes to their knowledge; and that they shall give notice of his condition to the town of which he is an inhabitant in order to charge such town with the cost of his support. In this case the following letter was sent by the first selectman of Hamden to the selectmen of Bethany:

"Hamden, February 8th, 1873. Selectmen of Bethany: Sirs: William Hall, who we believe belongs in the town of Bethany, is on the expense of the town of Hamden. He is a steady, hard-working man, but has had an accident and broken his leg. Yours truly, A. J. DOOLITTLE, First Selectman."

Bethany objects to the sufficiency of this notice, for the reason that it does not appear therefrom that Hall was then poor and unable to support himself. But we think that the objection is not well taken. The expression, "on expense of the town," has been accepted judicially as meeting the statute requirements. In *Middletown* v. *Berlin*, 18 Conn., 190, the selectmen of Berlin were notified that *A B*, an inhabitant of that town, was in Middletown "sick and on expense"; this court held that to be a legal notice, so far as that individual was concerned. In *Salem* v. *Montville* the notice stated that

Mrs. *P*, an inhabitant of Montville, was "on expense in the town of Salem." The court, in pronouncing the notice defective as not identifying the person, inferentially held it sufficiently descriptive of the condition.

Upon precedent then we hold that the notice is sufficiently precise and accurate in its description of the condition of Hall.

Again, Bethany objects to the legal sufficiency of the notice for the reason that the initial letter of the middle name of the person to whom it refers is omitted from it.

This claim subjects it to the operation of the rigorous rules of pleading, and demands that it shall always speak to a certain intent in every particular, as if it formed a constituent part of a series of pleadings in a proceeding at law. But this is not its character or office; it is not thus technical; it is not expected to proceed from, nor to be received by, men learned in the forms of law; it is designed as a method for giving definite knowledge in the ordinary sense of that term, not with absolute, but with a reasonable degree of certainty, to men accustomed to common business transactions. The selectmen of Bethany were not entitled to a notice which would exclude the most subtle and scrupulous objection or doubt; not entitled to one which would relieve them of the duty of making inquiry under all circumstances. For instance, if there had been two inhabitants of that town, each having precisely the same name without any affix, and one of them had become an occasion of expense to Hamden, we know of no unbending rule of law which would compel that town in its notice to Bethany to do more than give the name by which he is known, without addition; no rule compels it to devise and put upon him a distinguishing mark and assume the risk of being able to prove that it is accurate. The town of Bethany claimed, and offered evidence to prove, that there was another inhabitant of that town named William Hall. But the fact that the notice in question left upon the selectmen of Bethany the task of inquiring as to which of the two persons was referred to, is not necessarily fatal to it. The law requires of the notifying town reasonable care and dili-

gence in learning the name of the pauper, and reasonable fullness and accuracy in communicating that name to the town in which he has his settlement; and it requires of this last named town the use of a reasonable degree of fairness and diligence in applying the notice to the proper person. Indeed, it should exercise some degree of municipal comity towards the town which for the time being is bearing the burden of supporting one of its paupers. Selectmen are not to receive and read a notice and fold their hands and retire behind a possible doubt as to a misspelled name or an absent initial, when the briefest possible time given to investigation would dispel that doubt. The notice in this case stated as a descriptive fact that Hall then had a broken leg. The selectmen of Bethany say they were not certain as to which of two of the inhabitants of that town this description was applicable. The circle of inquiry was exceedingly narrow, and no serious labor was imposed upon them in compelling them to look at the two persons, both well known, and thus make that about which they entertained doubts absolutely certain. We think the notice giving both the surname and one Christian name in full, taken in connection with the descriptive facts therein contained, gave knowledge to the selectmen of Bethany as to the identity of the pauper with as much definiteness as the law requires.

A new trial is not advised.

In this opinion the other judges concurred.